Brianna Pierce, Esq. (SBN: 336906)
**BELLATRIX LAW, P.C**.
16868 Via Del Campo Ct., Ste 100
San Diego, California 92127
Phone: (858) 338-5650
Email: bkp@bellatrix-law.com

*Counsel for Plaintiff Skye Griffin*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SKYE GRIFFIN,<br><br>               Plaintiff,<br><br>v.<br><br>ELIZABETH CHEN (a/k/a ELIZABETH KEILY) and DOES 1-50, inclusive,<br><br>          Defendants. | Case No. 2:24-cv-07502-MWC-MAA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>Hearing Date: September 19, 2025<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Michelle W. Court<br>Courtroom: 6A<br><br>Complaint Filed: September 3, 2024 |

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff Skye Griffin ("Plaintiff") respectfully requests that the Court enter final judgment by default against Defendant Elizabeth Chen (a/k/a Elizabeth Keily) ("Defendant").

## I.    PROCEDURAL BACKGROUND

On September 3, 2024, Plaintiff filed this lawsuit asserting claims for libel per se (Count I) and violation of the California Civil Anti-Stalking Statute (Count II). [Dkt. # 1]. After Plaintiff filed a request for entry of default (Dkt. # 20), the clerk entered default against Defendant on January 2, 2025. [Dkt. # 21]. On March 17, 2025, Plaintiff filed a motion for default judgment ("Motion"), which is incorporated herein by reference. [Dkt. # 28].

On April 23, 2025, the Court granted Plaintiff's Motion in part and denied it in part. [Dkt. # 31] (the "Order"). In its Order, the Court held:

- Plaintiff met the procedural requirements for default judgment (*id.* at 3);

- Plaintiff will be prejudiced if the Court does not grant default judgment (*id.*);

- There is no indication that Defendant's default was the result of excusable neglect (*id.* at 7);

- The policy favoring a decision on the merits does not weigh against granting default judgment (*id.* at 7-8);

- Plaintiff sufficiently stated a claim for libel per se (Count I) (*id.* at 4, 7);

- Plaintiff did *not* sufficiently state an anti-stalking claim because, despite satisfying the first three elements of the claim, Plaintiff did not satisfy element four because the Complaint offered only conclusory allegations as to whether Defendant's pattern of conduct persisted after Plaintiff clearly and definitively demanded that Defendant cease and abate her pattern of conduct (*id.* at 5).

Based on the foregoing, the Court granted the Motion as to the libel per se claim, denied the Motion as to Plaintiff's anti-stalking claim, and set an evidentiary hearing as to the libel per se damages. [Dkt. # 31 at 9].

- 1 -

The Court's Order did not state that the denial as to the anti-stalking claim was made with prejudice. Nor did it provide leave to file a renewed motion. Thus, on May 8, 2025, Plaintiff filed an ex parte application for leave to file a renewed motion for default judgment to include additional evidence in support of Defendant's liability on the anti-stalking claim, as well as additional evidence in support of Plaintiff's entitlement to damages (Dkt. # 35), which the Court granted the following day (Dkt. # 36).

Accordingly, this Renewed Motion supplements Plaintiff's previous Motion and exclusively concerns the remaining default judgment issues: (1) element four of the anti-stalking statute (i.e., the continuation of Defendant's conduct after Plaintiff's cease and desist demand), and (2) Plaintiff's entitlement to monetary damages.

## II.    THE ANTI-STALKING CLAIM IS ADEQUATELY PLEAD AND MERITORIOUS

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

Plaintiff's anti-stalking claim is adequately pleaded. Under California's Anti-Stalking statute, a defendant is liable for the tort of stalking when the plaintiff proves:

(1) The defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff;

(2) As a result of that pattern of conduct, either (A) the plaintiff reasonably feared for his or her safety, or the safety of an immediate family member or (B) the plaintiff suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress; and

(3) The defendant, as a part of the pattern of conduct specified in paragraph (1), made a credible threat with either (i) the intent to place the plaintiff in reasonable fear for his or her safety, or the safety of an immediate family member, or (ii) reckless disregard for the safety of the plaintiff or that of an immediate family member; and

(4) The plaintiff must have, on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted in his or her pattern of conduct unless exigent circumstances make the plaintiff's communication of the demand impractical or unsafe.

- 2 -

Cal. Civ. Code § 1708.7; *see Thunder Studios, Inc v. Kazal*, No. 217CV00871, 2018 WL 5099726, at *4 (C.D. Cal. Mar. 22, 2018) (discussing elements).

In its Order, when assessing the "merits and sufficiency" of Plaintiff's anti-stalking claim, the Court held as follows:

> Here, as alleged, Defendant engaged in a pattern of conduct with the intent to harass Plaintiff, including "taking peeping Tom pictures outside of Plaintiff's residence, sending repeated and unwanted communication at all hours of the day and night, publicly disclosing private, intimate details about Plaintiff's life surreptitiously obtained through surveillance, and publishing defamatory Statements about Plaintiff on Instagram and through hundreds of group text message chats." Compl. ¶ 33. During the Relevant Period, Plaintiff was subjected to "to thousands of unwanted communications from Defendant, including repeated text messages and Instagram posts, including but not limited to threats and admissions of threats." Id. ¶ 35; see id., ¶¶ 36–38 (describing Defendant's conduct that placed Plaintiff in fear of her safety and experience of serious harassment). Plaintiff contends that she clearly and definitively demanded that Defendant cease and abate her pattern of conduct over the years. Id. ¶ 42. However, Plaintiff only provides one example of rejecting the unwanted communications on April 9, 2023, which is after the alleged conduct. See id. ¶ 24 (showing messages from 2022). *Despite the conclusory allegation that Defendant persisted the pattern of conduct, there are no allegations that Defendant's conduct happened post-April 2023.*
>
> Accordingly, *because the Anti-Stalking Statute requires Defendant to persist her conduct after Plaintiff made a definitive demand to cease, Plaintiff's claim fails* and therefore this factor weighs against entering default judgment.

[Dkt. #31 at 5 (emphasis added)]. In sum, the Court found that the allegations relating to Defendant's continued conduct (element four) were insufficient to establish the merit of Plaintiff's anti-stalking claim. Plaintiff respectfully disagrees.

In assessing the sufficiency and merits of element four, the Court must take the allegations of the Complaint as true, including the following:

- Defendant's course of stalking conduct began in March 2020. ¶¶ 1, 5-6, 33.

- Defendant's course of stalking conduct included the 2022 defamatory messages referenced in the Order, but also included, *inter alia*:
  - anonymously and incessantly harassing, threatening, and stalking Plaintiff—around the globe—at all hours of the day and night throughout the Relevant Period (¶3);
  - publishing Plaintiff's private, intimate information, which Defendant surreptitiously collected through her stalking efforts (*id.*);

- 3 -

- o taking peeping Tom pictures outside of Plaintiff's residence (¶33);

- o sending repeated and unwanted communication at all hours of the day and night (*id.*);

- o publicly disclosing private, intimate details about Plaintiff's life surreptitiously obtained through surveillance (¶33);

- o publishing defamatory Statements about Plaintiff on Instagram and through hundreds of group text message chats (*id.*);

- o thousands of unwanted communications from Defendant, including repeated text messages and Instagram posts, including but not limited to threats and admissions of threats (¶35);

- o secretly following or spying on Plaintiff without Plaintiff's consent, as evidenced by messages to Plaintiff that she was being watched (¶36);

- o contemporaneously posting Plaintiff's private whereabouts, such as the location of Plaintiff's hotel while Plaintiff was on vacation in different states and countries (*id.*);

- o by repeatedly telling Plaintiff that she was being watched and to watch her back (¶37a);

- o solidifying Plaintiff's fear by proving that Plaintiff was, in fact, being watched by, for example, identifying specific contemporaneous facts, such as who was at Plaintiff's house or whose car was parked in Plaintiff's driveway (¶37b);

- o doxing Plaintiff by revealing her personal information online without Plaintiff's consent, including Plaintiff's home address, phone number, financial information, and other personal details (¶37c);

- o messaging threats of violence about fighting Plaintiff in locations around the country where Plaintiff travelled for work (¶37d);

- o creating dozens of shell Instagram accounts through which Defendant posted Plaintiff's whereabouts, personal information, and made false and defamatory statements about Plaintiff, Plaintiff's family members, and Plaintiff's professional and business reputation (¶38a);

- o making false and per se defamatory statements about Plaintiff's chastity via thousands of text messages, Instagram messages, and social media posts; (¶38b);

- o bombarding Plaintiff with messages late at night and early in the morning— sometimes more than 80 messages at a time—so that Plaintiff was forced to read the messages just before bed and right when she awoke (¶ 38c);

- o sending thousands of anonymous messages to Plaintiff's acquaintances, including minor children, in which Defendant made defamatory, false, and harassing statements about Plaintiff's chastity, businesses, family members, whereabouts, personal information, and more (¶ 38d); and

- 4 -

o doxing Plaintiff's home address each time Plaintiff tried to secretly move and hide from Defendant (¶ 38(e)).

- On numerous occasions, Plaintiff clearly and definitively demanded that Defendant cease and abate her pattern of conduct. ¶ 42. Just one example of Plaintiff's demand to Defendant is a text message dated April 9, 2023. *Id.*

- Despite Plaintiff's demands, including but not limited to the one on April 9, 2023, Defendant's course of stalking persisted until June 2024 at which time Plaintiff obtained a three-year Civil Harassment Restraining Order against Defendant. *Id.*

Based on the foregoing, Plaintiff has adequately pleaded that Defendant's course of conduct (which consisted of much more than the 2022 defamatory statements underlying the libel per se claim) persisted until June 2024, which was more than a year after Plaintiff's April 9, 2023 cease and desist demand. Accordingly, Plaintiff has adequately pleaded element four of the anti-stalking statute and thus, Plaintiff has adequately pleaded the anti-stalking claim as a whole.

And because Plaintiff's anti-stalking claim is adequately pleaded, it is, thus, also presumptively meritorious. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[t]he default conclusively establishes the liability"). Nevertheless, the Court's Order suggests that element four was unsatisfied because "Plaintiff only provides one example of rejecting the unwanted communications on April 9, 2023, **which is after the alleged conduct. See id. ¶ 24 (showing messages from 2022)**." (emphasis added). But, as established throughout the Complaint's allegations in support of the anti-stalking claim, Defendant's course of conduct included—*but did not conclude with*—the 2022 messages. In fact, the 2022 messages are only identified in the Complaint with specificity because they are the defamatory statements underlying Plaintif's libel per se claim. While those defamatory statements are also part of Defendant's course of stalking conduct, as stated in Paragraph 38(d) of the Complaint, they are only one small subset of Defendant's much larger course of conduct, which persisted until June 2024.

As set forth in the Declarations of Skye Griffin ("Renewed Griffin Dec.") throughout Exhibit A thereto, Kathryn Griffin-Townsend ("Griffin-Townsend Dec."), and Terayle Garnett ("Garnett Dec."), filed in support of the Renewed Motion ("Renewed Griffin Dec."), Defendant's

- 5 -

stalking conduct continued after Plaintiff's April 9, 2023 demand in many of ways set forth in the Complaint, including: *inter alia*:

- Sending anonymous messages at all hours of the day intended to keep Plaintiff from a moment's peace, often focusing on her relationships, physical appearance, business (Griffin Dec., Ex A; Griffin-Townsend Dec. ¶¶ 7a, 7c, 9a, 9c, 11, 20);

- making false and per se defamatory statements about Plaintiff's chastity via text messages, Instagram messages, and social media posts (Griffin Dec., Ex A; Griffin-Townsend Dec. ¶7d; Garnett Dec. ¶ 6);

- Using text messages and social media posts to tag people in the music industry that Plaintiff was working with in order to convince them to stop working with Plaintiff (Griffin Dec., Ex A; Griffin-Townsend Dec. ¶ 7b; Garnett Dec. ¶ 6);

- Defaming Plaintiff by falsely accusing her of being a "PPP Fraud" (Griffin Dec., Ex A; Griffin-Townsend Dec. ¶ 7b; Garnett Dec. ¶ 6);

- contemporaneously posting Plaintiff's private whereabouts, such as the location of Plaintiff's hotel while Plaintiff was on vacation in different states and countries (Griffin Dec., Ex A; Griffin-Townsend Dec. ¶7c; Garnett Dec. ¶ 7).

Accordingly, to the extent necessary on this default judgment motion, Plaintiff has proven, in fact, element four of the anti-stalking claim by establishing that Defendant's course of conduct persisted after Plaintiff clearly and definitively told her to stop in April 2023. When taken together with the findings in the Court's previous Order, the *Eitel* factors weigh in favor of entry of default judgment against Defendant on Plaintiff's anti-stalking claim.

III.    **PLAINTIFF IS ENTITLTED TO MONETARY DAMAGES**

Although the Court must make a determination regarding the damages requested in a motion for default judgment, the Court is "not required to conduct an evidentiary hearing to ascertain damages" where evidence of damages has been provided. *Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010). The Court may rely on declarations in lieu of a damages hearing. *See, e.g., CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL

- 6 -

1130588, at *13 (C.D. Cal. Apr. 19, 2005) (finding "no reason to hold an evidentiary hearing on damages" because CFTC-submitted documentary evidence was "sufficient" to enter default judgment)[1].

Pursuant to Cal. Civ. Code § 1708.7 (Anti-Stalking Statute) and Plaintiff's claim for libel per se, Plaintiff is entitled to recover compensatory and punitive damages for the economic losses she suffered as a result of Defendant's actions, plus punitive damages. *See* Cal. Civ. Code § 1708.7(c) ("[a] person who commits the tort of stalking upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages")

As set forth in the Motion (Dkt. # 28 at 8-12), the Declaration of Skye Griffin filed therewith (Dkt # 28-2), and as further reiterated and proven in the Renewed Griffin Declaration, Plaintiff, is entitled to recover the following types of damages in the following amounts:

- o  Compensatory damages of  $2,577,472.00, consisting of:
    - ▪  $129,531.00 (lost profits) (Renewed Griffin Dec. ¶ 4)
    - ▪  $333,640.00 (expenses) (*id.* ¶ 6)
    - ▪  $561,301.00 (reputation harm) (*id.* ¶ 7)
    - ▪  $1,553,000 (emotional distress) (*id.*. ¶ 8)
- o  Or in the alternative, assumed damages in the amount of $2,000,000, and
- o  Punitive damages award of $5,156,944.00 (2x compensatory) (*id.* ¶ 9);

**CONCLUSION**

Based on the foregoing, Plaintiff requests that the Court grant this motion and enter default judgment on Count I and Count II in the total amount of in the amount of $2,577,472.00 in compensatory damages (or in the alternative, $2,000,000 in assumed damages) and $5,156,944.00 in punitive damages; and on Count II in the amount of $529,148 in special damages, $1,825,000 in general damages, and $7,829,148 in punitive damages. To the extent the Court wants additional

---

[1] Notwithstanding, Plaintiff is more than willing to present additional evidence of Plaintiff's damages at a hearing, if the Court believes the evidence proffered herewith is somehow lacking.

evidence of damages on either Count, Plaintiff asks the Court to granted leave to file that supplementary evidence or, in the alternative, for the Court to schedule an evidentiary hearing.

Dated: August 1, 2025

**BELLATRIX LAW, P.C.**

*/s/ Brianna K. Pierce*
Brianna K. Pierce (CA Bar No. 336906)
16868 Via Del Campo Ct., Ste 100
San Diego, California 92127
Phone: (858) 338-5650
Email: bkp@bellatrix-law.com

*Counsel for Plaintiff Skye Griffin*

- 8 -